WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Gill, | No. CV-13-01573-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Todd Gill (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits under the Social Security Act (the Act). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. For the following reasons, the Court reverses the Commissioner's decision and remands for further proceedings.

**I.     Procedural Background**

On March 23, 2010, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Tr. 12.)[1] Plaintiff alleged that he had been disabled since October 1, 2009. (*Id*.) Plaintiff later amended the alleged disability onset date to April 14, 2010. (Tr. 295.) After the Social Security

---

[1] Citations to "Tr." are to the certified administrative transcript of record. (Doc. 14.)

Administration (SSA) denied Plaintiff's initial application and his request for reconsideration, he requested a hearing before an administrative law judge (ALJ). After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 12-24.) This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-4); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.) Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**II.  Medical Record**

The record before the Court establishes the following history of diagnosis and treatment related to Plaintiff's health. The record also includes opinions from State Agency Physicians who examined Plaintiff or reviewed the records related to his health, but who did not provide treatment.

**A.  Medical Treatment**

Before the April 2010 amended disability onset date, Plaintiff saw Afeworki Kidane, M.D., for diabetes, back pain, anxiety, and medication refills. (Tr. 316-25, 456-58.) Dr. Kidane diagnosed Plaintiff with back pain, high blood pressure, diabetes, obesity, voice hoarseness, and noted generalized anxiety disorder. (Tr. 336, 402, 405, 408, 411, 414, 417, 419, 423, 432, 435, 438, 441, 444, 447, 450.) Plaintiff saw Dr. Kidane periodically during 2010 and 2011 with the same complaints (but mainly back pain), and for medication refills. (Tr. 384-455 (Dr. Kidane's treatment records from June 2010 to November 2011).) Dr. Kidane reported that examinations typically showed a "limited active ROM (range of motion)," full strength in Plaintiff's legs, and intact reflexes and sensation. (Tr. 384-455.) A December 2010 x-ray of Plaintiff's back showed "minimal degenerative changes of the lower lumbar spine." (Tr. 371.) A February 2012 x-ray of his back showed the same findings. (Tr. 562.)

In October 2010, as part of a term of probation, Plaintiff started mandatory substance abuse treatment at Lifewell Behavioral Wellness. (Tr. 492.) In an initial self-

1  report, Plaintiff stated that he could do all activities of daily living (Tr. 342), that he
2  wanted "to get back to dealing antiques" (Tr. 345), and that he wanted to "either get
3  social security or start a business." (Tr. 352.)  A mental status examination showed that
4  Plaintiff was talkative, slightly sluggish and anxious, displayed appropriate thought
5  content, was optimistic, oriented times four (person, place, time, situation), able to recall
6  three objects immediately and after three minutes, had limited judgment and impulse
7  control, and displayed poor insight. (Tr. 357-58.)  Therapists diagnosed Plaintiff with
8  opioid dependence. (Tr. 359-60.)  Plaintiff participated in approximately ten group
9  therapy sessions for his substance abuse between November 2010 and February 2011.
10 (Tr. 493-548.)  Plaintiff missed many scheduled therapy sessions.  (Tr. 493, 496, 499,
11 502, 503, 504, 508, 513, 516, 517-21, 534, 542, 543-48.)  In April 2011, therapists closed
12 Plaintiff's case due to lack of contact. (Tr. 492.)  Plaintiff also received treatment for
13 physical and mental complaints at Correctional Health Services while incarcerated in the
14 Arizona Department of Corrections.  (Tr. 302-13, 550-61, 563-70.)

15       **B.     Medical Opinion evidence**

16       In December 2010, Paul Drinkwater, M.D., performed a consultative physical
17 examination of Plaintiff.  On examination, Dr. Drinkwater noted an active range of
18 motion in Plaintiff's lumbar spine, and no tenderness, tightness, muscle spasms or
19 scoliosis.  (Tr. 365.)  He noted that Plaintiff was negative for fibromyalgia tender points.
20 (*Id.*)  Dr. Drinkwater further found that Plaintiff could tandem walk, heel walk, toe walk,
21 stand on one leg and then the other, and get on and off the examination table without
22 difficulty.  (Tr. 364.)  He also noted that Plaintiff had normal muscle tone, bulk, and
23 strength in his lower extremities, and had a functional range of motion in his hips, knees,
24 and ankles.  (Tr. 366.)

25       Dr. Drinkwater noted that Plaintiff reported fibromyalgia, but there were no
26 records documenting that diagnosis and his findings on examination were inconsistent
27 with a fibromyalgia diagnosis.  (*Id.*)  Dr. Drinkwater diagnosed diabetes in "questionable
28 control," high blood pressure under control, and "nonspecific back problems with a slight

decrease in range" of motion. (*Id.*) Dr. Drinkwater opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, and stand and/or walk six to eight hours in an eight-hour workday. (Tr. 367.) He also found that Plaintiff could frequently reach, handle, finger, feel, and climb ramps and stairs; occasionally stoop, kneel, and climb ladders; should never crouch, crawl, or climb ropes and scaffolds; and should avoid working around heights, chemicals, dust, fumes, and gases. (Tr. 366-67.)

Also in December 2010, Marcel Van Eerd, Psy.D., performed a psychological evaluation of Plaintiff. (Tr.392.) Plaintiff reported to Dr. Van Eerd that he watched television, managed his hygiene, shopped, paid bills, and read. (Tr. 373.) Plaintiff also reported a history of cannabis, cocaine, and opiate use and reported that he was on probation requiring drug and mental health treatment at the time of the evaluation. (Tr. 374.) Dr. Van Eerd noted that Plaintiff scored 26/30 on a mini mental status examination. He also noted that Plaintiff was skilled at social functioning, appeared manipulative at times, showed fair cooperation and adequate willingness to participate, but was also avoidant at times, displayed a worried and tearful expression, had fair organization of thought content, had poor credibility due to an exaggeration of difficulties, was hyper-vigilant, had low energy, a depressive mood, and a slow pace. (Tr. 375.)

Dr. Van Eerd diagnosed polysubstance dependence and mood disorder, and noted that Plaintiff's abilities were limited by reduced attention, concentration, motivation, and effort. (Tr. 375.) Dr. Van Eerd completed a psychological/psychiatric medical source statement opining that Plaintiff had: (1) mild limitations in understanding and remembering simple work-like instructions; (2) "moderate limitation in sustaining routines with slowed pace [and] difficulty managing supervision indicating a fair ability to make work decisions and fair management of stress"; (3) "mild limitations in interacting with others with adequate one to one behavior [and a] fair ability to manage critique and follow work rules"; and (4) "mild limitations in managing new information

[and being] able to recognize and respond to normal hazards with an adequate ability to follow up with goals and plans independently." (Tr. 376).

Later that month, state agency psychologist Rosalia Pereyra, Psy.D., reviewed the medical records and opined that Plaintiff had non-severe mental limitations, meaning they did not significantly affect his ability to perform work-related activities. (Tr. 88-89.)

In January 2011, state agency physician Vicki Kalen, M.D., reviewed the medical records and opined that Plaintiff could perform the equivalent of a range of medium work with some additional postural and environmental limitations. (Tr. 101-03.)

In December 2011, Dr. Alvarez at the Maricopa County Correctional Health Services completed a form in connection with Plaintiff's incarceration indicating that Plaintiff needed to sleep in the lower bunk and could not perform "off-facility work."[2] (Tr. 549.)

### III. The Administrative Hearing

Plaintiff was almost forty-seven years old and was represented by counsel at the administrative hearing. (Tr. 23, 30.) He was incarcerated at the time of the hearing and testified telephonically. (Tr. 32, 176.) Plaintiff testified that as the result of a 2005 car accident he had back pain that radiated to his toes and hands and restricted his movement. (Tr. 43-45.) He estimated that he could sit for about an hour, stand for thirty minutes at a time, walk for a quarter of a mile at once, and lift about fifteen pounds. (Tr. 45-46, 48.) He said that due to his diabetes, depression, anxiety, and bipolar disorder, he was depressed, easily overwhelmed, short-tempered, and had difficulty concentrating and understanding. (Tr. 46-47.)

Vocational expert Nathan E. Dean, M.Ed., also testified at the hearing. In response to questioning from the ALJ, the vocational expert testified that an individual with the limitations in the ALJ's residual functional capacity (RFC) assessment would be

---

[2] This form does not include Dr. Alvarez's full name.

unable to perform Plaintiff's past relevant work, but could perform other work existing in significant numbers in the national economy.[3] (Tr. 16, 58-62.)

### IV. The ALJ's Decision

A claimant is considered disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

#### A. Five-Step Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that he is not presently engaged in a substantial gainful activity, and (2) that his disability is severe. 20 C.F.R. § 404.1520(a)(4)(i) and (ii). If a claimant meets steps one and two, he may be found disabled in two ways at steps three through five. At step three, he may prove that his impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether a claimant's RFC precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education.

---

[3] Plaintiff's past relevant work included auto glass repairer, construction superintendent, and building repairer. (Tr. 22-23.)

20 C.F.R. § 1520(a)(4)(v). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

### B.     The ALJ's Application of Five-Step Evaluation Process

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2010, the amended alleged disability onset date. (Tr. 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity; fibromyalgia with low back pain; diabetes mellitus; hypertension; mood disorder with anxiety; and polysubstance abuse, in recent remission (20 C.F.R. § 404.1520(c) and 416.92(c).)" (*Id.*) At the third step, the ALJ found that the severity of those impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr 14-15.) The ALJ next concluded that Plaintiff retained the RFC "to perform light work as defined in 20 C.F.R.§ 404.1567(b) and 416.967(b) except the claimant should avoid climbing ladders, ropes and scaffolds, and crawling." (Tr. 16.) The ALJ also found that Plaintiff "could occasionally engage in stooping, crouching, and kneeling, and that he could frequently engage in climbing ramps and stairs, and balancing." (*Id.*) The ALJ further found that Plaintiff "should avoid concentrated exposure to irritants, such as fumes, odors, dusts, and gases; [and should avoid] exposure to chemicals and unprotected heights." (*Id.*) Finally, the ALJ found that Plaintiff was limited to "simple, unskilled tasks." (*Id.*) At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 22.) The ALJ concluded that, considering Plaintiff's "age, education, work experience, and [RFC], there [were] jobs that exist in significant numbers in the national economy that [Plaintiff] could perform." (Tr. 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 23-24.)

### V.     Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district

1 court reviews the Commissioner's final decision under the substantial evidence standard
2 and must affirm the Commissioner's decision if it is supported by substantial evidence
3 and it is free from legal error. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198
4 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ
5 erred, however, "[a] decision of the ALJ will not be reversed for errors that are
6 harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

**VI.  Analysis of Plaintiff's Claims**

Plaintiff argues that, based on the weight the ALJ assigned the medical source opinion evidence, he erred in formulating Plaintiff's RFC. Plaintiff also argues that the ALJ erred in assessing his credibility. (Doc. 15 at 2.)

**A.  Dr. Van Eerd's Opinion**

Dr. Van Eerd examined Plaintiff on December 15, 2010 in connection with his application for disability benefits. (Tr. 372-77.) Dr. Van Eerd opined that Plaintiff had mild limitations in remembering and understanding simple work instructions, mild limitations in interacting with others, a fair ability to make work decisions and follow

work rules, a fair ability to manage stress, a fair ability to manage criticism, a fair ability to follow work rules, and mild limitations managing new information. (Tr. 376.) He also found that Plaintiff had "a moderate limitation in sustaining routines with slowed pace," and moderate difficulty in managing supervision. (*Id.*) The ALJ assigned this opinion "great weight." (Tr. 20.)

Plaintiff argues that the ALJ erred by failing to include in the RFC the specific moderate limitation of pace found in Dr. Eerd's opinion, which the ALJ assigned "great weight."[4] (Doc. 15 at 5-6, Tr. 20.) Instead, the ALJ formulated an RFC that limited Plaintiff to jobs requiring "the ability to perform simple, unskilled work." (Tr. 16.) Consequently, the hypothetical the ALJ posed to the vocational expert also did not include the specific moderate limitation of pace that Dr. Van Eerd assessed. (Tr. 60-61.)

Plaintiff argues that ALJ's use of the term "simple, unskilled" work did not encompass Dr. Van Eerd's findings regarding Plaintiff's moderate limitations of pace, and that his implicit rejection of Dr. Van Eerd's opinion was error. The Commissioner responds that Plaintiff's argument was rejected in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). (Doc. 16 at 10.) *In Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174. There, the record contained some evidence of the claimant's slow pace, but the only "concrete" functional limitation provided by the medical sources was a medical source opinion that, despite that slow pace, the claimant could perform "simple tasks." *Id.* at 1173-74. The ALJ assessed an RFC that limited the claimant to "simple, routine, repetitive sedentary work." *Id.* at 1173. The Ninth Circuit concluded that the ALJ did not err in that formulation of the

---

[4] Plaintiff also argues that the ALJ erred by failing to include Dr. Van Eerd's assessed limitation of "not getting work done." However, Dr. Van Eerd did not find such a limitation. (Tr. 376.) Accordingly, the ALJ did not err for failing to include in the RFC a limitation that Dr. Van Eerd did not find.

- 9 -

RFC because it was consistent with the medical record and, as a result, the ALJ not err in posing hypothetical questions to the vocational expert. *Id.*

This case, however, is more analogous to *Brink v. Comm'r. of Soc. Sec. Admin.*, 343 Fed. App'x 211 (9th Cir. 2009), which distinguished *Stubbs-Danielson*.[5] In *Brink*, as in this case, the ALJ accepted medical evidence that the claimant had moderate difficulty with concentration, persistence, or pace, but posed hypothetical questions to the vocational expert based on an RFC that "referenced only 'simple, repetitive work,' without including limitations on concentration, persistence, and pace." *Id.* at 212. In finding error and rejecting the Commissioner's argument based on *Stubbs-Danielson*, the Ninth Circuit explained that:

> In *Stubbs-Danielson* . . . , we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Id.* at 1174. The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite.

*Id.*

The Court finds that the reasoning of *Brink* is persuasive and supports the conclusion that *Stubbs-Danielson* is not controlling here. *See also Bentancourt v. Astrue*, 2010 WL 4916604, at *3-4 (C.D. Cal. Nov.27, 2010) (when the ALJ accepted medical evidence of the plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the vocational expert including the plaintiff's restriction to "simple, repetitive work," but excluding the plaintiff's difficulties with concentration, persistence, or pace resulted in a vocational expert's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."); *Melton v. Astrue*, 2010 WL 3853195, at *8 (D. Or. 2010), *aff'd.*, 442 Fed. App'x 339 (9th Cir.

---

[5] Although *Brink* is an unpublished decision and thus only of persuasive value, its discussion of *Stubbs-Danielson* is instructive.

- 10 -

2011) (ALJ erred in her assessment of the plaintiff's RFC when the assessment included the plaintiff's restriction to simple, repetitive tasks, but did not include the plaintiff's mild-to-moderate limitations in maintaining concentration, persistence, or pace).

Here, as in *Brink*, the ALJ accepted Dr. Van Eerd's opinion that Plaintiff had "moderate limitations with concentration, persistence, and pace" (Tr. 20), but the RFC only referred to "the ability to perform simple, unskilled tasks." (Tr. 16.) That RFC is incomplete considering the ALJ's assignment of "great weight" to Dr. Van Eerd's opinion. Plaintiff's RFC, which the ALJ subsequently used to question the vocational expert about Plaintiff's ability to perform past relevant work and other work in the national economy, did not adequately reflect Dr. Van Eerd's opinion regarding the functional impact of Plaintiff's mental impairments on his ability to perform work in an eight-hour day. The ALJ said that he gave "great weight" to this opinion. (Tr. 19.) Accordingly, the ALJ erred in formulating the RFC and the error was not harmless because the vocational expert's testimony, upon which the ALJ relied to make his disability determination, was based on an RFC that did not include all of Plaintiff's limitations. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless when it is "irrelevant to the ALJ's ultimate disability conclusion."); *Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995) (for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations").

**B.    Remand**

Because neither the ALJ nor Plaintiff's counsel posed a question to the ALJ that accurately reflected all of Plaintiff's limitations, including the limitations that Dr. Van Eerd assessed and the ALJ adopted, the Court remands this matter to the ALJ for formulation of an accurate RFC that reflects all of Plaintiff's limitations, including his mental limitations.[6] *See Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000)

---

[6] Upon questioning by Plaintiff's counsel, the vocational expert testified that if a hypothetical individual was "off task for two hours three times a day," work would not be available. (Tr. 62.) Plaintiff's counsel explained that the "off-task" limitation was based on Plaintiff's testimony. (Tr. 62-63.) Upon further questioning by Plaintiff's counsel,

1  (stating that the decision to remand for further development of the record or for an award
2  of benefits is discretionary, and remand is appropriate when there are outstanding issues
3  to be resolved before a disability determination can be made).  In view of this ruling, the
4  Court does not reach Plaintiff's other claims of error.

   Accordingly,

   **IT IS ORDERED** that this case is **reversed** and **remanded** to the ALJ for further proceedings consistent with this Order.  The Clerk of Court shall enter judgment in favor of Plaintiff and against the Commissioner and shall terminate this case.

   Dated this 15th day of May, 2014.

   Bridget S. Bade
   United States Magistrate Judge

---

the vocational expert testified that a hypothetical person who worked at a pace that required "more than the usual 15-minute break and then the 30-minute break at lunch in two hour increments in the usual work day," and who was unable to get "work done within the allotted time" would be unable to perform jobs existing in significant numbers in the national economy.  (Tr. 63-64.)  Dr. Van Eerd's assessment does not include these limitations.  (Tr. 376.)

- 12 -